Thank you, Your Honor. May it please the court, my name is Mark Dunigan, Deputy City Attorney. I'm honored to be here representing the city this morning. Did you do the trial too, the two of you? I did not. Counsel was trial counsel. I was not from my office. So you're, because apparently counsel in the trial were pretty contentious with each other. That's fair to say, Your Honor. That they had a pre-existing relationship of some sort. Yes, absolutely. This was a pretty contentious case from beginning to end. It was, Your Honor. Respecting how little time we have available to us this morning, and again, thank you for your time. If there's a specific area, the city's identified four issues on appeal. I'm happy to go through them in sort of descending order of relief requested, but if the court is interested in a specific area, I'm happy to start there. I guess first, okay, you have a jury verdict, all right, and so certain things apply there. But on the whole, even if Sergeant Browett was wrong as to the precise workings of the FMLA, wasn't he correct that the FMLA entitled him to use his paid sick leave given the circumstances? And doesn't the FMLA protect employees that are wrong so long as their belief is objectively reasonable? And so I'm trying to put this in the perspective of the jury heard all of this, this going back and forth, and then, but they, even though it seems that the city probably could have been clearer in explaining things, it seems that Sergeant Brower may have had some points, but it certainly seems that he reasonably believed that he could take his sick leave and working that out, and then there were the e-mails. And then the jury also heard, and every time he went to a lieutenant's exam, that he, they kept bringing the e-mails up saying that, you know, he was kind of an unprofessional person, a hothead, that sort of thing. I looked at the e-mails, and they didn't really look that bad. I mean, the worst thing that he said was, well, I don't agree with you, and I'm going to grieve it. It's not like he went into HR. And so it seems like you're pushing a rock uphill on the retaliation part of it there. A couple of points that I would bring to Your Honor's attention. One is that, as you point out, the belief must be reasonable. 29 U.S. 2615A2 protects activity that is opposing, protects an employee who opposes unlawful activity. But also the belief that the activity is unlawful has to be reasonable. Our position is that it's not a reasonable belief in this case because Sergeant Browett was provided with a policy by his supervisor that clearly said the birth of a child allows for FMLA. Well, didn't that clearly say? I read all of that. It wasn't that easy to ascertain that. I mean, he was basically discussing, hey, my wife is dying, and I want to take sick leave to do that. And apparently that if you take your sick leave, but then he wanted to save his FMLA to bond later if his wife survived or whatever. But the way the two interact, it's not that clear. Well, if you look at the initial email to the department timekeeper that came up in his promotional interviews, he doesn't say, my wife is sick. He says, I refuse to tell you. The timekeeper who's observing department rules, who's observing the rule that if it's for bonding with a baby, you take vacation. If someone has a serious health condition, you can take sick. And she asked for clarification. Would you please provide an explanation? And he says, no, I don't have to do that. But also, Your Honor, I want to point out that that first communication has nothing whatever to do with the FMLA. It's simply, I think I have a right to take sick. I don't want to take my vacation. You can't make me take, I'm sorry, I want to take vacation and I don't want to take sick. But sick leave versus vacation leave, Your Honor, is not an FMLA issue. The FMLA contemplates banks of accrued paid leave, and it gives the employer or the employee the opportunity to run them concurrently. It took me forever to figure it out. So why couldn't, why, I mean, anyone that's dealt with HR or anyone that has a question, all he has to do is have a reasonable belief, right? Yes, and our position is that his belief that this activity was unlawful. In other words, the idea that he wanted to save his leave, that he wanted to stack it, which the FMLA does not give you the right to do, his belief that he could do that is not reasonable because page two of the policy he's provided said leave will be run concurrently with paid leave banks. So did, was HR just perfectly correct from the beginning and there was no need to have further discussions on this? No, I think there was some miscommunications, I think. Was HR wrong about anything? They were wrong that he couldn't take a sick leave. It just was a question of stacking, right? I would refer to it as a clerical error made by HR staff that she checked the box for vacation leave, not understanding that this was, in fact, for a serious health condition. Did that make it unlawful, though? No, I would say that the city's actions were not unlawful under the FMLA. I think that the city's actions were lawful under the FMLA, and that's why this belief was not reasonable. So that first communication, that first email, I don't think can form a basis for a retaliation claim because, again, Broward even testified at trial, he's not thinking about the FMLA. He doesn't care about FMLA. He cares about sick versus vacation. He says it didn't enter into his mind. Yet you get to trial, and counsel is framing this as a, quote, fight for FMLA rights. And I want to point Your Honor's attention to the complaint. Why do they keep bringing it up in his promotional exams? It just doesn't seem like it has anything to do with anything. I think that command staff had not a bad faith belief that they had some concerns with communications with his temperament, and in particular that these were non-sworn civilian staff, that they thought it was not, the command staff thought it was not the most professional way to approach a non-sworn civilian staff member. But if I could point your attention to the complaint, the only reason this is an FMLA case to begin with is this theory of stacking, which of course is an incorrect theory. It was disposed of at summary judgment. There's nothing in the complaint about this retaliation. It was sort of an afterthought. And the jury even found that the city did not interfere with his ability to take FMLA leave. No, Your Honor. Actually, the jury incorrectly found that they did interfere with his ability to take FMLA leave. Oh, I thought they found that they didn't interfere with it. No. The jury awarded him relief under both subsections of 2615. Oh, for some reason I was under the impression there was only one. In the post-trial motion, Your Honor, the district court finally understood that... Oh, the district court said that there was no interference with the FMLA. Only upon our post-trial motion, review of our post-trial motions, Your Honor. If I could... So if there was no interference with the FMLA rights, then what was the basis for a retaliation claim then? It's this theory that he opposed some unlawful activity. Not just unlawful. What was the unlawful activity if there was no interference? That's not resonating with me. If the judge found, I misspoke, I thought the jury found, but if the judge found there was no interference, then what would be the unlawful activity? The unlawful activity would be, well, the unlawful activity has got to be an activity that's made unlawful by the FMLA. And you are not allowed to then discriminate. Under the facts of this case, once the judge found that there was no interference with the ability to use the leave under the FMLA, then what unlawful activity remained to be opposed? I don't think there was any unlawful activity, Your Honor. That's my point. But the law is if an employee reasonably believes... Correct. ...that you still can find retaliation. So his belief would have to be unreasonable. Correct. And in this case, there's evidence to suggest that staff and HR tried to communicate what the policy was, what the lawful policy was to Broward, and that there was this miscommunication, that there was initially a refusal to talk about it with the department timekeeper, even though that was a legitimate process. But I guess under the standard in a jury, I don't know if the jury actually found that there was interference with the FMLA. And so that kind of, and then the judge ultimately said, well, no, there wasn't actually, but there was a reasonable belief. If the jury actually thought that, it seems like a person could think that. I would contend, Your Honor, that that demonstrates the misunderstanding. Because you argued there was no interference, right? And the jury still found it. Correct. I would suggest... It's a complicated statute, Your Honor, and I think the jury misapprehended it, and I especially think the district court misapprehended it. When he continued to say that this belief that you're entitled to claim sick leave instead of vacation leave is an FMLA-protected right. It is not. Counsel, neither counsel nor the district court can point to anything in the regulations or the statute that says that you get to pick and choose between different paid accrued leave banks. That's because employers, Your Honor, have all kinds of different leave plans. Some have PTO. They don't differentiate between sick and vacation. Counsel, could you discuss the jury instructions issue? Sure. The jury instructions, of course, are reviewed under an abuse of discretion standard. These were text of the federal regulations that the city proffered as instructions, and they tend to break out what the employer's reasonable expectations are under the FMLA. In other words, it's reasonable to require an employee to comply with what the internal policy is. It's reasonable to ask for more information for assistance in how to code this leave. The sections of the CFR that immediately precede these were allowed in, and when trial counsel for the city tried to point out these regulations, the district court completely shut that down. And so they had to fight again at the introduction of jury instructions, and the district court incorrectly, I think, found that there was no basis in the evidence for these instructions. But again, the supervisor sent the policy. The policy says you go to HR. Furthermore, the HR director testified in trial that employees are actually required to go through some of these steps, and it's informal. You could just go to HR. You could call someone. You could talk to your supervisor. But it's an important instruction, and it helps give the jury a sense of what the entirety of the law is because it goes to that reasonableness. It goes both to the reasonableness of the city's expectations in asking for more information and also to the unreasonableness, I would posit, of an employee who was provided this policy, said he read the policy, decided that the policy didn't apply to him. So unless that instruction, you know, unless the instructions fairly sort of give the jury a whole picture of the law, then it was a prejudicial error, and I think that is subject to reversal. If I could switch really quick to front page. I need to ask you a question just so that I can understand this. Since Sergeant Browett was, like, first on the list or then there was the seniority points, but he was always, like, high on the list, and then he wasn't selected, do you have, like, a rule of three, a rule of five, or what is it that, I mean, I've seen where there's a rule of one, which means the person that gets the top after the oral and the written and all of the assessments, you have to pick that person. Then I've seen rule of three, rule of five, and that means that essentially you can be first all the time, but you never get picked. What is the rule here? I don't want to speak outside the record. My understanding is that there's no requirement to pick number one. In other words, you pick from somewhere on that list. Well, it can't be the whole list. It's got to be. It's either, like, a rule of three or a rule of five or something like that. It's somewhere in there. I mean, a list is a short list. But essentially, if you don't want to pick someone, they can be one repeatedly and never get selected. Yes, there is that discretion within the committee. So how many times was he not selected? About five? In the briefing, counsel suggests it's five times. I'm aware in this record of three times. The three rights to an interview, it's based in its civil service rules, and counsel portrayed this as really nasty of them to continue to bring him back after his first interview went bad. But really, they're abiding by what the interview rules are. If we had not interviewed him the second and third times, there would have been a claim that we didn't give him the opportunity to promote. I really do want to address the front pay issue, Your Honor, so I'd like to reserve the remainder of my time to do that on rebuttal. Yes, I would like for you to talk about it now, please. And we'll give you a minute or two on rebuttal. Okay. I don't think you have to look any further than the Traxler case in the Ninth Circuit to see that front pay is an equitable issue that is for determination by the court sitting in equity, not for a jury. In this case, the jury arrived at a number based on essentially it was plaintiff's expert's number. It was a math problem. The math is all correct, but the jury is not provided with the instruction that this is a strongly disfavored remedy. Very importantly, it's only a remedy that you see in cases where the employee no longer works for the company. Okay, but the judge knows all this, and the jury is not—that isn't why the jury—he had the jury sit as a recommendation to him. Correct. But the question is, okay, if—did you offer to promote him to lieutenant? At what point, Your Honor? Well, after—at this—well, after the front pay when you were making the motions after to say, no, no, no, we don't want you to pay on the front pay. We'll just promote him to lieutenant. I mean, we apprehended that that would have been the correct remedy, I would say, at the time of post-trial briefing. But it wasn't too late to do that, Your Honor. It's not as if the court would have had to throw out a jury verdict. Well, but the judge said that it was super contentious that he didn't think that the person could go back there. And yet he is back there. He never left the employee. That's—this is the only case you can find— Well, I want to ask you about that. Okay, being a sergeant and being a lieutenant are two different positions. The sergeants interact more with the patrol officers. The lieutenant is more of the brass in the administration. And he has problems with the brass in the administration. So are they the same jobs, and how is he doing right now? They're not the same jobs, Your Honor. You're correct about that. But I would also say that the way that front pay should be tailored should be as a complement to injunctive reinstatement. So this brass that he doesn't get along with, they're going to be gone in a couple of years. There's still 12 years left on this front pay award where he's collecting lieutenant's money. So if he can make lieutenant and these people that don't like him are gone, and then he can get past this rule of three or rule of five, what happens then? If that was the bar that is too contentious to go beyond, Your Honor, I would suggest that's a perfectly appropriate thing to arrive at an equitable hearing, yes. What was the last one? But at this point, if he were promoted, the front pay is not going to go away. It discontinues, correct? The front pay is structured to take him through his retirement date. It's not a temporary remedy in this case like it's supposed to be. So what I'm suggesting is an appropriate front pay award would be for six months or a year or two years until he can be placed in the position. Well, how long is the chief going to be there? How long are the people that don't like him going to be there? You're asking things that are outside of the record, Your Honor. I'm happy to volunteer. Well, I know, but six months wouldn't necessarily solve the problem. They're much closer to being gone than Sergeant Rowlett is, I would say that. There's plenty of opportunity for an award that gives him front pay to some certain point, and then he gets put in the position. Well, I have another. Like, okay, you look at this and you say, well, why doesn't he just go to another job if they hate him? He can't go to another department and be a sergeant, right? I don't know that he couldn't. Well, don't you? I mean, if you go to another department, if you're lucky enough to get hired, you don't come in as a sergeant, right? You have to work your way up again. No, Your Honor, you can laterally hire into a rank. I'm not suggesting that that's the appropriate issue. I understand that Sergeant Rowlett performs well in his job. I'm not suggesting that he leave. I'm just suggesting that the front pay award is against the balance of both precedent and the equities in this case. It creates a situation where he doesn't have to mitigate anything. He doesn't have to even be a good sergeant because he's not trying to get promoted, and he's collecting lieutenants' money. This is a million dollars in taxpayer money. We're stewards of the taxpayer money. We're trying to figure it out. But what indications can you give us that he would likely be a lieutenant? I mean, he was at the top of the list before, and everywhere on there, they always mentioned this issue as why they didn't like that he— It was a single list process. It wasn't multiple tests over and over. That's the same list he's coming back to interview on, Your Honor. So he didn't keep testing. It's just that they kept having vacancies, and this same list was being used for multiple vacancies. Yes. All right. Thank you. That will give you a minute for rebuttal. Thank you. Are you amused, counsel? Pardon me, ma'am? Are you amused? No, ma'am. I'm trying to relax, and that's—I smile when I'm trying to relax, and that's just a way for me to catch my breath and become centered. My wife is sitting in a stand. She looked at me to remind me to take a deep breath and relax, and so I was following her advice. If it would please the court. Jack D. Campbell on behalf of the plaintiff appellee, Michael S. Brow, and yes, I was trial counsel, and so I'm here to tell you that the city's argument that Mr. Brow was not opposing an unlawful practice under the FMLA falls on every set of standards. If you take a look at the Department of Labor standards under 29, Section 825, starting at .100 and going all the way through .700, it delineates the obligation of the employer to protect the rights granted to the employee by the FMLA, and under 2615A1, interference is described as preventing or discouraging the use of FMLA. Your leave. Counsel, under this record, what fact discouraged the use of FMLA leave? As a small timeline, Mr. Brow's child was born on April 7, 2015. On April 8, when he's home from the hospital, he calls his two direct supervisors, both of his lieutenants, and tells him about the birth of the child. Now, he testified under oath that he had had previous conversations with these supervisors, and because of his wife's preexisting condition that developed in their first childbirth, he knew he was going to take sick leave off, a substantial amount of time off, to take care of the babies and his wife. So when he called his lieutenants from the hospital, one of those lieutenants, not at a request of Mr. Brow, but one of those lieutenants went into the timekeeping, the electronic timekeeping, telestaff, and entered in several weeks of vacation time, unbeknownst to Mr. Brow. Mr. Brow comes home from the hospital. At that point, do you think there was an interference with FMLA at that point? No, ma'am. Okay. No, ma'am. Mr. Brow comes home from the hospital. He responds to it. He has got an email from the bookkeeper, the bookkeeper of the Reno Police Department, who responds to HR. The bookkeeper is questioning the sick leave on the telestaff and says— Is that interference at that point? No, ma'am. Okay. And says, at this time, I want to make you advised of our paternity policy, that if you're taking time off just to bond with your baby, you have to use vacation time. You can't use your sick time. Mr. Brow responds and says, I'm not going to talk to you if the chief I'm taking sick according to my contract. And if you want to know the reasons why, have the chief ask. But they knew the reason why because she said, our paternity policy. So they knew HR knew. Now, if you want, this whole thing can be just take a look at the designation. Was there interference at that point? At the designation? Yes, Your Honor. So you're saying when the clerk designated the time as a sick time, that was the interference—as vacation time, that was the interference with FMLA? They designated the time without telling Mr. Brow that—without providing him the notice required under Section 825.300. They designated it, and they designated it improperly, saying he was taking time to bond with his baby and therefore denied him the right to substitute accrued sick leave. And if you take a look at the interference claim at the designation, the reason why the timeline is important, Mr. Brow does not—remember, he takes his—he's on his own normal days off on March—on April 8th during the birth of his child. He takes sick leave in accordance to the Article 10 of the Collective Bargaining Agreement, which guarantees him 11 days a year and states very clearly that the only one who can challenge or certify the use of sick leave is the chief of police, and then grants the chief of police the authority to request the medical certificate if necessary. So Mr. Brow is taking leave according to the leave policy. He comes home on—from the hospital on May 11th. May 11th, one month later, and he is—in the mail is the designation. And the designation says we have placed you on FMLA leave, and we have done it in accordance to this, that you're bonding with your baby, and then specifically in three separate notations in that designation, denied him the right to use sick leave. Now what's really important is to take a look at the designation. What they say is they say we, the city of Reno, became aware of your need for leave on April 13th. That you needed FMLA leave starting on April 17th. And we have now designated that leave and taking off the chance to substitute accrued sick leave. Now that, under the leave policy, Article 10 says Mr. Brow is entitled to use sick leave to care for any family member suffering a serious health condition. Should he dispute that, or did they concede that he was, in fact, that Mr. Brow—that Sergeant Brow was correct on that point? They absolutely conceded. They conceded when he challenged them. They conceded— But what was their position at the trial? Did they say that Sergeant Brow was right about that? No. Not until they ultimately had to admit it. Well, when was that? The union resources director admitted it on the record, as well as Marlene Chappell, the FMLA administrator for the city of Reno. During trial? Yes. Admitted in front of the jury that the designation that she sent was wrong. She admitted that she had the doctor's notes in her hand at the time that she sent the designation. She admitted that she knew that the doctor's notes indicated that he was caring for a sick relative, and he was due to use his sick leave. But your position is, from the time they did it until trial, they took the position that it was correct what they did? They still are. I thought you said they conceded it. They just stood up and did it right in front of you right now. They still are saying that. Now, this is absolutely incorrect, because Section 825.700 of the CFR says that an employer must take into consideration the collective bargaining agreement. Well, he said, I don't want to put words in his mouth, but I thought he said it was a clerical error. It was three times. Marlene Chappell testified under oath. She said, I asked, did you notice that the designation was wrong? She testified she knew that it was wrong after Broward brought it up. I said, did you have enough information in your hand to make the right designation? She said she did. I asked her, why did you send out the wrong designation? She stated, I was told to. The human resources director told her to send the designation for bonding with your baby, not caring for a serious health condition. So, not only that, but you've got to remember, on May 11th, when he gets that designation, they have post-designated back to April 17th and told him that he can't use the sick leave he has been using. So, Mr. Broward responds to that. He responds in that email and says, one, why are you putting me on FMLA? I didn't ask for it, and under my leave policy, I don't need it. I am allowed to. And make a difference in how he gets paid. If you're on the FMLA, you don't necessarily get paid. The sick leave is what pays you, right? Correct. He had accrued sick leave preparing for this. He knew that he was going to take time after the baby. He had been accruing his sick leave specifically because it was his right under his contract. But if he doesn't want FMLA, how is there interference with his FMLA if he doesn't want it? This court in Eshria v. Foster Poultry Farms in 2014. I was on that panel. Pardon me? I was on that panel, so be careful how you characterize it. This court specifically said that an employee has the right to delay, preserve, or rather deny FMLA leave even if, in fact, the FMLA qualifies. So in 2015, when he says, I want to preserve my right so I can take care of my wife or the family in case she dies, he has the right to do that. In Eshria, this court said that was the employee's right. So not only did they violate his, interfere with his rights when they refused to follow that, they interfered with his rights when they refused to allow him to substitute sick leave. And so that when he responds to the email on May 12th, he actually responds on May 11th. He responds on May 11th. When he responds, he is objecting to not being able to delay, substitute sick leave, and he objects to not being able to delay. So that is a protected communication. Under Lew v. Amway, that is a protected communication of which he is now opposing both of these violations. They capitulate immediately. He has a conversation with them. She takes it back to the human resources director. They write him back an email and say, you're right. You get to use your sick leave. Now at trial, they never sent him a new designation. They admitted this. Never sent him a new designation. Never credited any account other than his sick. But they did not know how much of his FMLA he had used or not used, and they did not know whether they had retroactively appointed him. Now under 29 CFR 825-300, you cannot do that. An employer must designate, must put them on notice within five days. Of what's FMLA and what's sick and what's not. Of becoming aware of the need to take leave that may qualify. Does the employee have an obligation to request FMLA leave at any point? Under Section 302, the employee must ask for leave. The employee is not obligated to know that he has FMLA qualifying leave. He needs to ask for leave. And then the onus is back on the employer to ask him the conditions of the leave and then to make the appropriate designation. Well, didn't they try to ask him what the purpose was? And he said, I'm not going to discuss that with you, what the purpose is. No, that's not true. Well, I thought that's what you said, that he said, I'm not going to tell you, I'll tell the chief. I thought that's what you just represented. And then on that same day, right after he tells the bookkeeper, he doesn't tell the bookkeeper, I'm not going to tell you. He says, I'm not going to put it in Telestat. What does that mean? He's not going to put in the reason for his use of sick leave in the electronic timekeeping system that's open to everybody at the police department. He says, I will tell the chief if they want to know. He then calls the deputy chief, deputy chief Vinson, that immediately after that email is sent back to Lori Heidenreich, he calls the deputy chief. They talk about his need for leave. The chief says, well, you know you get 11 days. The chief, deputy chief Vinson, then counsels him to stand his ground and don't let them force him to not be able to use his sick leave and use vacation because the deputy chief Vinson thinks that's a discriminatory policy. And he counsels Mr. Broward to oppose and fight with him over it. And Mr. Broward asked Mr. Vinson, deputy chief Vinson, specifically, I don't want to do anything that could jeopardize my chances of promotion. And deputy chief Vinson, looking straight in the eye and said, I promise you this will not affect your ability to promote. That's right out of your closing argument, wasn't it? So tell us about front pay. It seems like a real windfall for your client. You know, first off, the thought that even if Mr. Broward were to quit, that that would be a windfall is completely contrary. Well, but that's not what we have. We have him still with the department. So tell me the case authority that supports the award of front pay when the employee is still employed with the entity. This theory of recovery has been long in this, and it is long and consistent. Starting in 1976. Give me your absolute best case for the proposition that front pay is appropriate when the employee is still employed with the entity. Give me your absolute strongest case for that proposition. Craxler v. Mullimuth County, Your Honor, because it rests upon the same holding that's in Thorn v. The City of El Segundo. Now, Thorn v. The City of El Segundo was one in which that court, the district court, awarded front pay for the duration of that individual's career. So Sergeant Broward is probably, what, now they're 15 years? Yes, Your Honor. Okay. And this has been going on since, what, 2015 or something like that? I don't know. The first Passover was June of 2015, four and a half years ago, Your Honor. So if he can make lieutenant, then he would get lieutenant's pay plus the front pay. Why wouldn't that be a windfall then? I was very happy to see your sophistication with the law enforcement industry, because, no, you don't get the laterally out hire. Departments don't laterally hire sergeants or lieutenants. They may laterally hire deputy chiefs and chiefs, but it's not. That doesn't happen. Well, if he wanted to go somewhere else, would he be able to pass the background after you've already sued your department? You know, that's an interesting question. Well, I'm just wondering. It's like we're trying to figure out, and is he doing okay now, or is he? What the court saw was that this current administration had taken its time to discriminate against Mr. Broward, and they did it for out justification. His employee file, as the district court recognized, he was a model police officer, destined to go forward. He was number one. He was valedictorian of his class, right? And they don't have a rule of three, Your Honor. He was the number one candidate on that list, and that list expired with him still being the number one on that list. Well, but like a rule of three is you don't have to pick. Do they have to pick the number one person? They do not. They take it upon themselves that they are allowed to select whichever one they want. Of the whole list? Of the whole list. That's how the city of Reno operates. And so at the end of the list, when it expired after one year, Mr. Broward was the number one candidate and was the only one left on it. They promoted five lieutenants over him. Counsel, could we get back to the law? In Traxler, what is the language that you're relying upon to support your argument that someone who is still employed with the entity can receive front pay? Tell me the precise language in that case that supports your argument. Because Traxler, the person, was no longer working there, right? Traxler, she had quit and made the argument that she could not recover. And the jury had awarded her one and a half minutes. I know the facts of the case. I'm asking you, what language in there supports the argument that someone who is still employed with the entity is entitled to receive front pay? What language? Give me a page number and some language. Your Honor, as I stand here, I don't have the case in front of me with that page number. But I will tell you that the court in Traxler very specifically analyzed the holding in Thorne v. The City of El Segundo. I get that. And as much as it applies to someone who is no longer employed with the entity. But it's extremely unusual to have front pay. Do you have one case that you can cite where there has been, other than this case, where there has been front pay awarded and the individual is still employed by the entity? One case. Thorne v. The City of El Segundo. She was a clerk typist for the City of El Segundo. She tested and promoted to become a police officer. And they denied that to her. Did you cite that in your brief? It was sent back down. Is that case cited in your brief? Yes, Your Honor. It was sent back down. Yes, 802, Fed 2nd, 1131. To determine whether or not sufficient animosity existed to prevent her reinstatement as a police officer or the court was to establish nine years of future pay. It should have to be reinstated. Promoted. Promoted, Your Honor. And in that case, the court actually remanded it down for a second hearing on that specific issue. And in that case, at least El Segundo put their chief of police up and said we would hire her back as a police officer. Now, at that time, Thorne said she didn't want the job back anymore. Okay, so that's when front pay comes into being if the person isn't able to go back to the employment. So that still begs the question as to whether or not front pay is permissible when the individual is still employed there. Front pay awarded by this court was clearly only the amount of money between Mr. Broward's sergeant's pay and what he would have made as a lieutenant and then a commander. There is no recovery for Mr. Broward's base sergeant pay. So there is no windfall. And as the court— So there's no windfall unless he gets promoted to lieutenant and commander. Correct, and it still has the award. Right. But that is not—what is missing is not only the animosity about them and the discussion that Commander Wicking had with Chief Soto right after he passed Mr. Broward over for the first time and she, who had been his commanding officer his entire career, said do not be that guy. Broward deserves a right to promote. And Chief Soto promised her that he would promote him. And he didn't, and she testified that she had been lied to. Counsel, could you tell me the language in Thorne that you're relying upon to support the argument that someone who is still employed with the agency may be awarded front pay? What page are you on? Again, Your Honor, I am sorry as to the page citation, but Thorne quotes Sengster v. United Airlines, and this is the specific quote. And I put it here— No, I'm interested in the language that says that someone can be employed with the agency and still receive front pay. Your Honor, I'm trying to tell you this is the development of the law that Thorne quotes because this quote right here explains why this is not a windfall. If relief is to be limited in any significant measure in all instances where an employee quits one job after unlawfully being denied another job by the same employer, then the employee would be constrained either to contribute by his labors to an employer who has treated him unfairly and persists in that unfair treatment or to take less than a whole remedy for injuries suffered. So then in Thorne, it looked forward to equity, and it made a determination— Well, I think the closest language in Thorne is assuming that defendants bore no hostility towards the plaintiff as long as she remained a clerk typist. It does not follow that they would welcome her into the midst as an officer. That's the court recognizing the position. But that doesn't say that the person is still employed. That's the issue I have with the front pay, and I don't think we're going to resolve that here today. I mean, but on that issue— You're way over your time. We understand your argument. But if I may finish up that one point, as was asked, did they ever make an offer to promote him? When you're thinking about reminding this down to address— Counsel, that's outside the record. So we heard your argument. We understand it. Thank you very much. Rebuttal. Thank you, Your Honor. Quickly, I believe that the plaintiff in Thorne resigned from employment. I don't want to make that absolute representation. Certainly you can check that case. I couldn't find any case where anyone was still employed and got a front pay award like this. Again, counsel's here. If he was promoted to lieutenant, would you have a right to go into court and say, since we're dealing with equities, the equities have changed and the award should be reduced in some way? Oh, absolutely. I would think that if the court sitting in equity did the proper consideration here of what all the equities are, things that a jury is just not capable of, it's nonlinear decision-making. Great. But could you do it after the case is closed? I'm saying like two years from now. Let's say you promote him. Can you go in front of Judge Jones or his successor and say the equities have changed? I don't know, Your Honor. I would suggest that would be a very tough row to hoe. I haven't seen that anywhere. I think it would be far more preferable to get it right on the front end. Okay. So what did Judge Jones say down below? I mean, he understood it was his discretionary call. It was only an advisory verdict from the jury. He heard all the testimony, and he obviously felt that the likelihood was that the only way for him to get full relief was to give him front pay. He actually said, you know, well, because it's public safety, I don't want to jeopardize public safety. He said someone else would have to be demoted. That's not fair. But, again, the court is just making suppositions at that point. Those are the kinds of things that should have occurred in an equitable hearing and could still occur. Well, but he also knew in the trial he'd been passed over numerous times, and every time that he went to those. I mean, the jury apparently felt like it wasn't likely that he was going to become a lieutenant. The command staff, well, he walked into court and said, I don't want to be a lieutenant. He said, I want the money. So I don't think the jury was thinking about that at all. They weren't told that the preferable remedy is actually injunctive promotion. But is there something else your Honor said that I wanted to get at? Well, if you get put in as a lieutenant, then you have to start your probation all over again, right? You do. And then if you don't make it as a lieutenant, are you fired there or what? Generally, you go back down to the grade that you came from. Yeah, there would be a demotion. I would, as counsel for the city, I would caution my clients that they're not to, you know, improperly retaliate. I do want to say that I think executives say. But they could. The court could say. So executive staff testified that they did not know that they weren't allowed to consider these conversations, okay? That goes to, I think, not a bad faith. They openly admitted, yeah, we talked to them about this stuff. We didn't know we weren't allowed to. In the wake of this case, I think it's perfectly expectable that command staff would know what they should and shouldn't be considering if they're instructed that way by the district court, if the award gets tailored. In other words, promote them and you're not allowed to, you know, you're not allowed to go into that kind of stuff. That's what this case established. But essentially, if you reduce the front pay as you're asking them what he would have to do if they retaliate against him in the future, he has to bring another lawsuit, right? He would have a new retaliation claim, yes. He has to bring a new lawsuit. He would. Were there liquidated damages awarded as well? There were. And that, I'm far over my time, but, you know, that was an abuse of the district court's discretion because he didn't just say, I'm not persuaded by your argument that this was a good faith retaliation. He said, I refuse to consider your argument, even though in post-trial motions we made a completely different argument, which, again, like I just said, is that executive staff said, if I'm a bad faith actor, I'm not going to bring it up in the interview to begin with. I'm going to hide my, you know, my nefarious reasons. They didn't do that. They said, we were objecting to the way that he was treating staff. We didn't know we couldn't do that. I would suggest that is evidence of good faith. The district court is free to not be persuaded by that, but the district court refused to consider the argument. Well, but aren't you still objecting to what he did? You've never said that what he did was okay. You're still objecting, right? So why would we believe that they know that they can't object anymore? It's still your position. They're still taking the position they were right. I'm suggesting that the FMLA is a round hole. In this case, it's a square peg. It was never about FMLA. The council's up here talking about all this interference with FMLA. As a matter of law, there's no interference because his right to those 12 weeks of leave was never prejudiced. That's the end of the interference discussion. All you're left with is this reasonable belief of unlawful activity. I'm suggesting that if you look at the technical language and the statutes and the regs, there's nothing unlawful that the city did here that could be opposed. Rowett was, he was rejecting his FMLA rights. It's like if you gave me wheelchair access to your courthouse and I said, how dare you give me wheelchair access? Take it back. And then when someone asks me why I did that. I guess what I'm questioning here is you're saying, trust us. We know that we can't do this anymore, and we're not going to continue to bring up and retaliate against him if he wants to be a lieutenant. But you're still taking the position that everything that they did was okay. I'm making a legal argument, Your Honor, about what that statute says. But I understand that. But I'm having a little, you know, and I'm wondering if that's what the jury and the court were thinking. They don't trust you. They don't trust the city. The jury was never even told that injunctive promotion would have been the correct remedy in this case. Well, whether or not they trust you or not has nothing to do with whether the law permits front pay. That's not a matter of trust. That's a matter of law in this case. That's true, Your Honor. Yes. Thank you, counsel. Thank you so much, Your Honor. Thank you both, counsel. The case just argued is submitted for decision by the court. The final case on calendar for argument is Jimenez v. Barr.
judges: Rawlinson, Callahan, Lasnik